**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**ASHLEY CREEL**                                                                                          **PLAINTIFF**

**V.**                              **CASE NO. 4:21-CV-00627-KGB-JTK**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                                              **DEFENDANT**

**RECOMMENDED DISPOSITION**

This Recommended Disposition (Recommendation) has been sent to United States District Judge Kristine G Baker. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I. INTRODUCTION**

On July 1, 2019, Ashley Creel applied for disability benefits, alleging disability beginning on October 21, 2017. (Tr. at 15). Her claims were denied both initially and upon reconsideration. *Id*. After conducting a hearing on October 29, 2020, an Administrative Law Judge ("ALJ") denied Creel's application on August 5, 2020. (Tr. at 20). Following the ALJ's order, Creel sought review from the Appeals Council, which denied her request

1

for review. (Tr. at 1). The ALJ's decision thus stands as the final decision of the Commissioner, and Creel now seeks judicial review.

For the reasons stated below, this Court should affirm the decision of the Commissioner.

## II. THE COMMISSIONER'S DECISION

The ALJ found that Creel had not engaged in substantial gainful activity since the alleged onset date of October 21, 2017. (Tr. at 17). At Step Two, the ALJ found that Creel had the following severe impairments: migraine headaches, chronic obstructive pulmonary disease (COPD), asthma, pseudo tumor, right sided carpal tunnel syndrome, obesity, depression, anxiety, attention-deficit/hyperactivity disorder (ADHD), bipolar disorder, and mild intellectual disability. (Tr. at 18).

After finding Creel's impairments did not meet or equal a listed impairment (Tr. at 19), the ALJ determined that she had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, except that: (1) she could only occasionally stoop, bend, kneel, couch, and crawl; (2) she could perform no more than frequent fingering and handling with the dominant (right) upper extremity; (3) she must avoid concentrated exposure to dust, odors, gases, fumes, and she would require a controlled environment; (4) she could only do work that is simple, routine, and repetitive with supervision that is simple, direct, and concrete; and (5) she could have no more than occasional contact with supervisors, coworkers, and the general public. (Tr. at 22).

Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that Creel was unable to perform any of her past relevant work as a CNA, transportation/van driver,

registered medical assistant, and developmental disability aide. (Tr. at 29). The ALJ then found that Creel's RFC would allow her to perform other jobs that exist in significant numbers in the national economy, including the jobs of document preparer, addresser, and stone setter. (Tr. at 30). The ALJ concluded, therefore, that Creel was not disabled. (Tr. at 31).

## III. DISCUSSION

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It

means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Creel's Arguments on Appeal

Creel argues that the ALJ's decision is not supported by substantial evidence because he failed to properly evaluate medical opinions from two of Creel's medical sources in determining the RFC. The Commissioner contends that the ALJ properly considered the medical opinions and that substantial evidence supports the ALJ's decision. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

As part of determining a claimant's RFC, an ALJ is required to evaluate any medical opinions in the administrative record to determine the persuasiveness of each opinion. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The persuasiveness of a medical opinion is based on the consideration of a number of factors, including the supportability of the opinion, the consistency of the opinion with other evidence in the record, the medical source's relationship with the claimant, any specialization the medical source may have, and any other factors that tend to support or contradict the opinion. *Id*. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and the ALJ will explain in the final written opinion how these factors were considered. *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2). With regard to the supportability factor, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the opinion will be. *Id*. §§ 404.1520c(c)(1), 416.920c(c)(1). As for consistency, the more consistent a

medical opinion is with the evidence from other medical and nonmedical sources in the record, the more persuasive the opinion will be. *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2).

On appeal, Creel faults the ALJ's assessment of two medical opinions in the administrative record. The first comes from Olivia Cox, APRN, who treated Creel at Baptist Health Neurological Clinic. Nurse Cox filled out a Migraine Headache Form in September 2019. (Tr. at 874-75). She indicated that Creel suffered from migraines without aura more than once a week for 6-12 hours at a time, with associated symptoms of nausea, vomiting, photophobia, phonophobia, throbbing, and pulsating. Although she noted that Creel's migraines had a "fair" response to medications, Nurse Cox opined that the migraines would interfere with Creel's work, causing her to miss about one day of work per week. The ALJ found that Nurse Cox's opinion was "not supported by objective findings" and was inconsistent with other evidence in the record. (Tr. at 26). Creel challenges both of these conclusions.

Creel argues that migraines cannot be established through objective testing, and therefore the ALJ's should not have insisted on objectively verifiable evidence of migraines to support the opinion. But this argument misunderstands the import of the supportability analysis, which concerns the rationale underlying a medical source's opinion. Nurse Cox's opinion consisted of a checklist form wherein she filled in the location and duration of Creel's migraines, and then checked their frequency and applicable accompanying symptoms. (Tr. at 874). This form did not provide any findings tied to clinical or diagnostic data, nor did it reference Nurse Cox's own treatment notes or other medical evaluations. *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018)

(describing opinions as having "little evidentiary value" when they "consist of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses"). Nurse Cox's failure to cite any medical evidence or provide any elaboration to support her opinion that Creel would miss one day of work per week justifies the ALJ's supportability finding.

Creel also maintains that the ALJ ignored evidence in the record which was consistent with Nurse Cox's opinion. She challenges the ALJ's finding that the opinion was inconsistent with treatment notes from other providers, because the other providers were not treating her headaches. Instead, she posits, the ALJ should have focused on the neurology records in her file that support the opinion. She specifically points to neurology notes showing that she was reporting at least one headache per week throughout the relevant time period, along with numerous disabling symptoms, including those which Nurse Cox checked on the migraine form. (Tr. at 534, 667, 674, 681, 689, 700, 709, 1296, 1343). But the neurology records, including Nurse Cox's own treatment notes, are not fully consistent with her medical opinion. The records show that Creel reported noncompliance with her migraine medication on numerous occasions, despite reporting improvement when she used them consistently. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (explaining that "noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion"); *Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009) (stating that "if an impairment can be controlled through treatment or medication, it cannot be considered disabling").

6

For example, at her first neurology appointment, Creel reported having headaches, but she admitted that she was not regularly taking her prescribed prophylactic migraine medication. (Tr. at 668). At her next two appointments, she reported that her medications were "working well," and she was only getting "one tolerable headache per week still." (Tr. at 674, 681). At the following appointment, she reported that her headaches were increasing in frequency and severity, but that her acute onset migraine medication was still helping. (Tr. at 689). After a medication adjustment in late 2018 (Tr. at 706), she was not seen again until nine months later (Tr. at 709). At that time, she reported that she had stopped taking her prophylactic medication again due to side effects, and she had been having daily headaches ever since. *Id*. She was advised to continue taking her medication and stop smoking in order to improve her headaches. (Tr. at 714). Creel saw Nurse Cox for her last two neurology appointments of record, and the treatment notes show that Creel again reported noncompliance in taking her medication at both appointments, even though she admitted improvement in her headaches when she took them regularly. (Tr. at 1296, 1343). These neurology records do not significantly undermine the ALJ's conclusion.

The ALJ also properly considered treatment notes from other providers as part of the consistency analysis. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ cited treatment notes showing that Creel was alert and in no acute distress (Tr. at 897, 936, 963), that she often denied headache symptoms in her medical visits (Tr. at 885, 913, 934-35), as well as a lack of emergency room visits to treat her migraines (Tr. at 24, 26). This evidence supports the ALJ's consistency finding. "Despite [Creel's] dissatisfaction with

how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022).

Finally, the ALJ specifically noted that, according to pharmacy records, Creel had gone six months in 2020 without filling any prescriptions for her migraine medication. (Tr. at 444-45). Creel's position is that she testified under oath to taking migraine medications during that time period, so the ALJ should not have drawn a negative inference against her based on the pharmacy records. After carefully reviewing the hearing transcript, the Court does not agree that Creel gave such testimony. (Tr. at 56-63). Moreover, the ALJ's conclusion is supported by Nurse Cox's treatment notes, which show that Creel was not consistently taking migraine medication in January 2020, at the beginning of the time gap, or in July 2020, at its end. (Tr. at 1296, 1343).

In sum, substantial evidence supports the ALJ's evaluation of Nurse Cox's medical opinion. The ALJ was entitled to discount the persuasiveness of the opinion for the foregoing reasons.

The second medical opinion at issue on appeal comes from Dr. Herman Clements, Creel's main mental health care provider. (Tr. at 841-44, 1649-53). Dr. Clements opined that Creel was seriously limited in her ability to remember procedures, follow simple instructions, maintain attention for two hours, maintain regular attendance, sustain an ordinary routine, make simple decisions, complete a normal workday and workweek, ask simple questions, accept instructions, respond to changes, set realistic goals, deal with stress, or travel in unfamiliar places. He stated that Creel would be unable to meet competitive standards in dealing with normal work stress and carrying out detailed

8

instructions. Dr. Clements found Creel to be "limited but satisfactory" in her ability to carry out simple instructions, work with others, perform at a consistent pace, get along with others, be aware of normal hazards, interact with the public, maintain appropriate behavior, adhere to standards of neatness, and use public transportation. He opined that Creel's mental impairments would cause her to miss more than four days of work per month and be off task at least 25 percent of each workday. He concluded that she would be incapable of even "low stress" work.

Dr. Clements based his opinion on "clinical findings" of "cannot cope with mild stress, severe fatigue, decreased concentration, decreased thought processing, [and] irregular mood." (Tr. at 1649). The ALJ found that Dr. Clements's opinion lacked support because it was based on Creel's reported symptoms, rather than on Dr. Clements's own observations. (Tr. at 28-29). This conclusion is supported by Dr. Clements's treatment notes, which show that despite her complaints, Creel consistently exhibited normal cognitive function, normal judgment, normal speech, normal behavior, normal intact thought processes, and no signs of inattention. (Tr. at 576-77, 588, 594-95, 600, 1619, 1624-25, 1635-36). Developmental and cognitive testing was also consistently normal. *Id*. The ALJ did not err in determining that Dr. Clements's opinion was not well-supported.

Nor did the ALJ err in finding the opinion inconsistent with treatment notes from other medical providers, which provide clinical findings of normal memory, attention, behavior, and appearance. (Tr. at 936, 956, 1033, 1117, 1212, 1644). Dr. Clements's opinion is also inconsistent with Creel's conservative mental health treatment history, which consisted of routine psychiatric therapy and medication management, with no

evidence of inpatient or emergency treatment for her psychological symptoms. *Moore*, 572 F.3d at 525. In fact, Creel reported to another mental health provider (at Dr. Clements's clinic) that her current medications for ADHD, anxiety, and mood were working well when she took them consistently. (Tr. at 27, 1612).

The ALJ adequately explained his well-justified reasons for finding Dr. Clements's opinion unpersuasive, and the Court finds no error in this case that warrants reversal.

## IV. CONCLUSION

Substantial evidence supports the Commissioner's decision that Creel was not disabled. The Court should affirm the Commissioner's decision and enter judgment in favor of the Defendant.

IT IS SO ORDERED this 26th day of July 2022.

_____
UNITED STATES MAGISTRATE JUDGE